```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division
                                       )
VOLKSWAGEN, AG AND VOLKSWAGEN          )
GROUP OF AMERICA, INC.,                )
                                       )
     Plaintiffs,                       )
                                       )
          v.                           )         1:08cv819 (JCC)
                                       )
                                       )
VOLKSWAGENTALK.COM,                    )
                                       )
     Defendant.                        )
                                       )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Volkswagen, AG and Volkswagen Group of America, Inc.'s (Plaintiffs) Motion for Summary Judgment on this in rem action against "volkswagentalk.com" (Domain Name).  For the following reasons, the Court will grant the motion.

## I. Background

The facts presented in the complaint are as follows. Plaintiff Volkswagen AG (VWAG) is a successful automobile manufacturer, whose automobiles are recognized world-wide.  The core of the company is the Volkswagen brand.  Plaintiff VWAG registered the "Volkswagen" trademark in 1955 (U.S. Reg. No. 0,617,131) and uses it in conjunction with the "VW Emblem" trademark which it registered in 1966 (U.S. Reg. No. 0,804,869), (collectively, the "VW Marks").

1

Plaintiffs use the VW Marks to advertise their goods and services online and operate a number of websites using domain names that incorporate the VW Marks.  Plaintiffs also authorize their licensed dealers to operate websites using domain names that incorporate the marks.  One of Plaintiffs' main websites is "volkswagen.com."

The domain name against which Plaintiffs file this suit consists of the "Volkswagen" trademark combined with the generic term "talk."  The Domain Name hosts a commercial website that displays paid or sponsored advertisements for Plaintiffs' competitors.  It also functions as a marketplace for unlicensed products bearing the VW Marks and aftermarket products for Plaintiffs' automobiles.  This website displays the VW Emblem, its title "VolkswagenTalk.com" in the Memphis Bold font used by Plaintiffs, and a photograph of a VW automobile (Plaintiffs' trade dress).  It uses the VW Marks and the names of Plaintiffs' automobile models as metatags, unseen website codes that assist search engines in classifying websites.

Plaintiff filed a verified complaint on August 6, 2008 (Complaint) alleging violations of the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).  This is an *in rem* action pursuant to subsection (2) of the ACPA.  Plaintiff has attempted service on the registered owner of the Domain Name (Registrant) by first class mail and e-mail to the addresses

provided in the WhoIs database, which displays the registered names and addresses of domain name owners.  Plaintiff also published a notice in The Washington Times on August 22, 2008, pursuant to the order of Magistrate Judge Jones on August 19, 2008.  Registrant has not entered an appearance or filed an answer.  The twenty-day time period of answering a verified complaint after publication of notice of action has expired.

Plaintiff filed a Motion for Summary Judgment on October 6, 2008.  Registrant did not respond.  This matter is currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).  The party seeking summary judgment has the initial burden to show the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts

showing that there is a genuine issue for trial." *Id.* (quotation omitted). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id*. at 255; *see also Lettieri v. Equant Inc*., 478 F.3d 640, 642 (4th Cir. 2007).

A verified pleading "is the equivalent of an [] affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

### III. Analysis

A. <u>Cybersquatting Claim</u>

Plaintiff brings its Complaint under the Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d). Subsection (2) of the Act provides that "the owner of a mark may file an *in rem* action against a domain name in the judicial district in which the domain name registrar [or] domain name registry . . . is located if" Plaintiffs can establish each of the elements of a trademark infringement or dilution claim[1] and, second, that the owner is not able to find or to obtain *in*

---

[1] Plaintiffs' Motion for Summary Judgment incorrectly asserts that subsection (2) requires Plaintiffs to show a violation of the ACPA, 15 U.S.C. § 1125(d)(1)(A), as part of this *in rem* claim. The Act actually requires Plaintiffs to show that the Domain Name violates *any* right of the owner of the registered mark or rights protected under subsections (a) (trademark infringement) or (c) (trademark dilution). *Id.* at § 1125(d)(2)(A)(i); *see also id.* at (a)(1) and (c). Based on the facts asserted in the Complaint, the Court has elected to analyze Plaintiffs' motion under the requirements of a trademark infringement action.

4

*personam* jurisdiction over the person who would have been the defendant in the ACPA action.  *Id.* at § 1125(d)(2)(A).

Congress created subsection (2) largely for the purpose of providing remedies for trademark owners who cannot find a person or entity responsible for registering the offending domain names.  *Harrods Ltd. v. Sixty Internet Domain Names*, 110 F. Supp. 2d 420, 426 (E.D. Va. 2000) (citing S. Rep. No. 106-140 ("A significant problem . . . in the fight against cybersquatting is [that} . . . many cybersquatters register domain names under aliases or otherwise provide false information in their registration applications in order to avoid identification and service of process by the mark owner . . . [The ACPA] will alleviate this difficulty . . . by enabling a mark owner to seek an injunction against the infringing property.")).

To establish trademark infringement, Plaintiffs must show (1) defendant's use in commerce (2) of any reproduction, counterfeit, copy, or colorable imitation of a registered mark (3) in connection with the sale, offering for sale, distribution, or advertising of any goods or services (4) which is likely to cause confusion, or to cause mistake, or to deceive.  15 U.S.C. § 1225(a)(1)(A).  To show trademark dilution, Plaintiffs must show that it (1) owns a distinctive famous mark, (2) the use by another in commerce of which (3) is likely to cause dilution by blurring or tarnishment, regardless of the presence or absence of

actual or likely confusion, of competition, or of actual economic injury.  *Id.* at (c).

Thus, the Court will grant summary judgment in this case if Plaintiffs can show that the facts about which there is no material dispute show that (1) Plaintiffs' claim is brought in the jurisdiction where the registry of the infringing domain name is located; (2) *in personam* jurisdiction over the domain name's registrant does not exist, or the registrant cannot be found through due diligence; (3) Plaintiffs own the disputed mark; and, (4) defendant used, in commerce, (5) any reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' marks, (6) in connection with the sale, offering for sale, distribution, or advertising of goods or services (7) which is likely to cause confusion, mistake, or deceive.

       1.   *Registry Located in this Jurisdiction*

In their Complaint, Plaintiffs attest that "[t]he domain name registry for volkswagentalk.com is VeriSign Global Registry Services, 21345 Ridgetop Circle, Dulles, Virginia 20166."  Compl. at ¶ 5.  "The domain name registrar for volkswagentalk.com is EstDomains, Inc., 110 West Ninth Street #688, Wilmington, Delaware 19801."  *Id.*  Plaintiffs allege that this Court has jurisdiction over this *in rem* matter because the Domain Name's registry is located in the Eastern District of Virginia.  15 U.S.C. § 1225(d)(2)(c)(1) ("In an *in rem* action

under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which the domain name registrar . . . is located"). The Court agrees and finds that the Domain Name's registry is located in this district.

    2.   *No In Personam Jurisdiction Over Registrant*

In the Complaint, Plaintiffs attest that the current Registrant is Unitex Galina Kozlova, Gotvalda Str 21/3-32, Ekaterinaburg, Sverdlovskya oblast, 640000 Russia. Compl. at ¶ 5 (Registrant). Plaintiffs allege that it is unable to obtain *in personam* jurisdiction over Registrant because Registrant is located in Russia with no known contacts in the United States. *See* 15 U.S.C. § 1125(d)(2)(a)(ii)(I); *Continental Airlines, Inc. v. CONTINENTALAIRLINES.COM*, 390 F. Supp. 2d 501, 507 (E.D. Va. 2005). The Court finds that *in personam* jurisdiction over the person or entity who would be the defendant does not exist.

    3.   *Ownership of a Mark*

To succeed on this claim, Plaintiffs must show that they own the disputed mark. Plaintiffs attest that it registered the "Volkswagen" trademark in 1955 (U.S. Reg. No. 0,617,131) and the VW Emblem in 1966 (U.S. Reg. No. 0,804,869) and that they have continued to use these marks in commerce since their registrations. Compl. at ¶¶ 11, 13. The Court finds that Plaintiffs have established ownership of the VW Marks.

4.   *Use of the Mark by Another in Commerce*

Plaintiffs must also show that the disputed mark was used by another in commerce. Plaintiffs' Complaint states that its "Volkswagen" mark has been and is currently being used in the domain name of a commercial website "volkswagentalk.com." Compl. at ¶ 20. Use in an internet domain name constitutes use "in commerce." *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001). The Domain Name uses Plaintiffs' mark in commerce.

5.   *Use of a Reproduction, Copy, or Colorable Imitation of Plaintiffs' Marks*

Next, Plaintiffs must show that the defendant has used a reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' registered marks. Plaintiffs' Complaint states that the "Volkswagen" mark is employed, verbatim, in the domain name "volkswagentalk.com." Compl. at ¶ 20. This fact is sufficient to establish this element. *See Doughney*, 263 F.3d at 364; *Continental Airlines*, 390 F. Supp. 2d at 507.

6.   *In Connection with Sale, Offering for Sale, Distribution, or Advertising of Goods or Services*

The penultimate element of Plaintiffs' claim requires a showing that the Domain Name is used in connection with the sale, offering for sale, distribution, or advertising of goods or services. Plaintiffs' Complaint asserts that "volkswagentalk.com" "serves as a marketplace for unlicensed

8

products bearing the VW Marks and was designed to lure unsuspecting consumers into purchasing goods and services bearing the VW Marks from unlicensed providers." Compl. at ¶ 21. Plaintiffs also assert that the website "displays paid or sponsored advertisements for [Plaintiffs'] direct and indirect competitors." *Id.* at ¶ 22.

The use of "volkswagentalk.com" to sell or advertise goods or services constitutes use of the VW Marks "in connection with" goods or services. "Volkswagentalk.com" hosts paid advertisements, courtesy of Google Advertising. *See* Compl. at Ex. D. It also includes posts by users about aftermarket parts and unlicensed accessories. *See id.* at ¶ 21. Providing links to commercial operations offering goods and services constitutes use of a mark "in connection with" the sale of goods or services. *Doughney*, 263 F.3d 359, 365 (4th Cir. 2001) (citing *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176, 182-83 (W.D.N.Y. 2000) (finding that use was in connection with goods or services because the relevant website contained a link to the defendants' commercial apartment-guide website). The Court finds that "volkswagentalk.com" uses the VW Marks to advertise goods and services.

7.   *Likelihood of Confusion*

Finally, Plaintiffs must show that defendant's use of its marks causes a likelihood of confusion. Determining whether

9

a likelihood of confusion exists requires the application of the seven-factor likelihood-of-confusion test. In the context of this case, these factors are:

    (1) strength of Plaintiffs' mark;
    (2) similarity between Plaintiffs' mark and "volkswagentalk.com";
    (3) similarity between Plaintiffs' services and the services provided at "volkswagentalk.com";
    (4) similarity between the facilities Plaintiffs use in connection with their provision of services and those used by "volkswagentalk.com";
    (5) similarity between Plaintiffs' advertising and advertising done by "volkswagentalk.com";
    (6) intent underlying the use of the domain name "volkswagentalk.com; and
    (7) existence of any actual confusion.

*Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir. 1997); *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F. Supp. 2d 488, 497 (E.D. Va. 1999). The Court recognizes that not all of these factors carry equal weight or are relevant to every case. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). Whether a likelihood of confusion exists depends on the specific facts of each case. *See Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992); *Continental Airlines*, 390 F. Supp. 2d at 507-08 (E.D. Va. 2005).

    Plaintiffs have made no assertions relevant to factors 5 (advertising) and 7 (actual confusion); these factors are thus not relevant here. Regarding factor 1 (strength of Plaintiffs' mark), the Court finds that the VW Marks are indisputably famous

and are distinctive of Plaintiffs' services in commerce.  *See Continental Airlines*, 390 F. Supp. 2d at 508; *Cable News Network L.P. v. CNNews.com*, 162 F. Supp. 2d 484, 486 (E.D. Va. 2001). Factor 2 (similarity of marks) also weighs in Plaintiffs' favor because the Domain Name employs Plaintiffs' "Volkswagen" mark verbatim, joined with the generic word "talk."  Third, the service provided under the marks - automobile sales, service, and accessories - is closely related to the service offered at "volkswagentalk.com" - sales of aftermarket parts for Plaintiffs' automobiles, do-it-yourself service, service recommendations, and accessories.  While these services are not identical, they are similar to Plaintiffs' services and they are intended to supplant the provision of those services by Plaintiffs.  Thus the parties' respective services are sufficiently similar to cause this factor to weigh in Plaintiffs' favor.

Fourth, the facilities used by Plaintiffs in connection with their services include the Internet: Plaintiffs operate the websites "vw.com," "volkswagen.com," and "volskwagenservice.com." Thus, Plaintiffs and "volkswagentalk.com" offer services through identical means.  Factor 6 (intent in using the mark) points toward confusion.  The logical purpose of registering the Domain Name, and using Plaintiffs' marks and trade dress prominently on the website, is to capitalize on consumer confusion as to the source, sponsorship, affiliation, or endorsement of its products

and services.  Further, Plaintiffs attest that the Domain Name "is currently being used to host a commercial website that has been deliberately designed to appear as if it is operated by [Plaintffs]."  Compl. at ¶ 20.  This website "lure[s] unsuspecting consumers into purchasing goods and services bearing the VW Marks from unlicensed providers rather than from [Plaintiffs] and [their] duly authorized licensees."  *Id.* at ¶ 21.  These facts show that the Registrant had a bad-faith intent to profit from Plaintiffs' marks when it registered the Domain Name.

"[A] clear majority of the foregoing factors point persuasively to the conclusion that consumer confusion will likely result from [the] use of ['volkswagentalk.com']." *Continental Airlines*, 390 F. Supp. 2d at 508.  Given the facts and the above evaluation of the relevant factors, the Court finds that, on balance, the evidence weighs in favor of a finding for Plaintiffs.  Plaintiffs have shown trademark infringement, as well as the elements necessary to prevail in an *in rem* action under the ACPA.

  B. <u>Requested Remedies</u>

Plaintiffs pray that the Court grant it injunctive relief in the form of a transfer of the disputed domain name from its current owner to Plaintiffs.  If liability for cybersquatting is found, "a court may order the forfeiture or cancellation of

the domain name or the transfer of the domain name to the owner of the mark."  15 U.S.C. § 1125(d)(1)(C).

The Court finds that the transfer of the disputed domain name, "volkswagentalk.com," to Plaintiffs is an appropriate remedy.  The Court will order the Registrant through its Registrar and the Registry on which it is registered, to transfer the domain name "volkswagentalk.com" to Plaintiffs in accordance with the requirements of 15 U.S.C. § 1125(d)(1).

### V. Conclusion

For these reasons, the Court will grant Plaintiffs' Motion for Summary Judgment.

An appropriate Order will issue.

```
October 29, 2008                    _____/s/_____
Alexandria, Virginia                         James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE
```